**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTINA W.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | No. 25-CV-2051-CJW-KEM<br><br>**ORDER** |

## *I. INTRODUCTION*

A Report & Recommendation ("R&R") by the Honorable Kelly K. E. Mahoney, Chief United States Magistrate Judge, recommending the Court affirm the decision of the Administrative Law Judge ("ALJ") denying Christina W.'s ("claimant") application for supplemental security income ("SSI") under Title XVI of the Social Security Act, Title 42, United States Code, Sections 1381-1383f is before the Court. (Doc. 24). Claimant filed an objection. (Doc. 25). The Commissioner of Social Security ("Commissioner") filed a response. (Doc. 26). For the following reasons, the Court **overrules** claimant's objection, **accepts** Chief Judge Mahoney's R&R **without modification**, and **affirms** the ALJ's decision denying claimant SSI.

## *II. BACKGROUND, STANDARDS, AND THE ALJ'S FINDINGS*

The Court finds that Chief Judge Mahoney accurately set out the background, disability determinations and burden of proof, the ALJ's findings, and the substantial

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

evidence standard, (Doc. 24, at 1–17), and claimant does not object to any portion of it. Thus, the Court adopts those portions of the R&R and incorporates them by reference without replicating them here.

The key background information as summarized by Chief Judge Mahoney is that claimant "received disability benefits based on intellectual disability and a mood disorder" for six years from 2010 to 2016 until "a finding of medical improvement." (*Id.*, at 1). Claimant filed two subsequent applications for SSI benefits, in 2018 and 2020, both of which were denied. (*Id.*, at 2). Claimant "filed the current application for SSI benefits on January 18, 2022. She alleged disability since birth based on chronic pain, nerve pain, sleep apnea, anxiety, depression, bipolar disorder, and anti-social behavior (not migraines)." (*Id.*). "The Social Security Administration denied [claimant]'s disability claim on initial review in July 2022 and on reconsideration in January 2023." (*Id.*, at 10). The ALJ held a hearing in August 2023, and, after the Appeals Council reversed and remanded the case, held a second hearing in October 2024. (*Id.*, at 12–14).

On December 12, 2024, the ALJ issued a written opinion, finding that "the claimant has not been under a disability within the meaning of the Social Security Act since January 18, 2022, the date the application was filed." (Doc. 13-2, at 30). The ALJ found that "claimant has not engaged in substantial gainful activity since January 18, 2022, the application date," "claimant has the following severe impairments: migraines; degenerative disc disease of the cervical spine; chronic pain syndrome; asthma; obesity; generalized anxiety disorder; and major depressive disorder," "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," "claimant has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 416.967(b) except with the ability to stand or walk for 4 out

of 8 hours hours [sic]; with the ability to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, but never climb ladders, ropes, or scaffolds, or crawl; should work in an environment with a moderate noise intensity level or less; with the need to avoid exposure to workplace hazards; and is limited to simple routine tasks, with the ability to occasionally interact with co-workers and supervisors, but with no work-related interaction with the public," and, ultimately, "claimant has not been under a disability, as defined in the Social Security Act, since January 18, 2022, the date the application was filed[.]" (*Id.*, at 31–45). On April 25, 2025, the Appeals Council denied claimant's request for review. (Doc. 24, at 16).

On September 8, 2025, claimant filed a complaint before this Court. (Doc. 6). On November 25, 2025, the Commissioner filed an answer and provided the administrative record. (Docs. 13 through 13-27). On February 27, 2026, claimant filed her brief. (Doc. 20). On March 25, 2026, the Commissioner filed his response. (Doc. 21). On April 8, 2026, claimant filed a reply. (Doc. 22). On September 2, 2026, Chief Judge Mahoney issued her R&R, recommending that the Court affirm the ALJ's decision denying SSI. (Doc. 24). On September 16, 2026, claimant filed an objection to the R&R. (Doc. 25). On September 18, 2026, the Commissioner filed a response. (Doc. 26).

## *III. STANDARD OF REVIEW OF AN R&R*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also

> receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## *IV. THE R&R*

In her brief before Chief Judge Mahoney, claimant argued (1) the ALJ erred by relying on obsolete jobs—specifically, the jobs of ticket counter, addresser, and document preparer—without proper inquiry or compliance with the Social Security Administration's own guidance and by failing to provide evidence of regional job numbers, (2) the ALJ erred by failing to evaluate listing 11.02B (epilepsy) for claimant's severe migraine impairment, (3) the ALJ's finding on RFC failed to adequately account for claimant's photophobia and light sensitivity, and (4) the ALJ erred by failing to properly analyze

whether claimant's walker was medically necessary. (Doc. 20, at 3, 8–43); *see* 8 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02B (dyscognitive seizures). In other words, claimant objected to Steps Three, Four, and Five of the ALJ's five-step process for considering claimant's disability claim. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (outlining the five steps); 8 C.F.R. § 404.1520(a)(4) (same).

The Commissioner responded that "the vocational expert provided reliable testimony on how the occupations are currently performed and there is no requirement that the expert provide regional job incidence data." (Doc. 21, at 2). "Regarding [claimant]'s migraines and use of a walker, the ALJ relied upon the findings of two [s]tate agency medical consultants to determine that (1) [claimant]'s migraines did not meet or medically equal a listed impairment, (2) she had no light related environmental limitations, and (3) her use of a walker was not medically necessary." (*Id.*). Overall, the Commissioner argues, "substantial evidence supports the ALJ's decision" and thus it should be affirmed. (*Id.*, at 3).

In her reply, claimant, rephrases her argument as the ALJ erring when he "(1) relied on three obsolete or [emergency message ("EM")]-recognized jobs that the Commissioner's own agency has flagged as requiring heightened evidentiary standards the ALJ never satisfied; (2) skipped all analysis of the listing most analogous to [her] severe migraine disorder; (3) credited noise sensitivity while silently discarding equally documented light sensitivity from the same examination; and (4) dismissed walker necessity by cherry-picking two isolated normal findings from a record replete with documented gait dysfunction, diagnosed imbalance, and provider instructions to use a walker." (Doc. 22, at 2).

In her R&R, Chief Judge Mahoney recommended affirming the ALJ's decision denying claimant SSI. (Doc. 24, at 1). Specifically, regarding the migraine issue, she stated, "the record does not support that [claimant] suffered migraines equal in severity

and frequency to Listing 11.02B. Indeed, for most of the relevant time period, [claimant]'s headaches did not need prescription treatment at all. In addition, there is no evidence of the symptoms caused by [claimant]'s migraines when she was taking her medications[.]" (*Id.*, at 20). Regarding the light sensitivity claimant argues accompanies her migraines, Chief Judge Mahoney stated, "I recommend finding that the ALJ did not err by failing to limit [claimant]'s exposure to light in the RFC." (*Id.*, at 21). Turning to the walker issue, Chief Judge Mahoney stated, "the ALJ could rely on [claimant]'s improvement and lack of documentation in the treatment notes of actual walker usage. In addition, here, there is no medical evidence of the circumstances under which [she] would need to use a walker . . . [thus] the ALJ did not err by failing to include the need for a walker in [her] RFC." (*Id.*, at 22–23). Last, Chief Judge Mahoney stated regarding the significant number of jobs in the national economy issue, that many courts find that a number more than 20,000 jobs in the national economy is significant, and because the ALJ found 24,400 jobs, she "recommend[s] rejecting [claimant]'s argument that the ALJ failed to prove a significant number of jobs existed in the national economy based on the lack of regional job numbers." (*Id.*, at 28).

## *V. DISCUSSION*

In her objection to Chief Judge Mahoney's R&R, claimant asserts error in Chief Judge Mahoney's review of the ALJ's lack of a Listing 11.02B analysis, the lack of a light limitation, and the lack of a walker requirement. (Doc. 25). Specifically, claimant "requests de novo review of whether the failure to evaluate Listing 11.02B was harmless, including whether the ALJ's own recitation of frequency satisfies the listing's threshold," "requests de novo review of whether the noise-only limitation, drawn from a paired clinical finding, is adequately explained," and "requests de novo review of the medical-necessity determination in light of the provider-directed walker use the R&R itself recites . . .with specific consideration of the November 21, 2022 standardized testing

results . . . [and] whether the record as a whole satisfies SSR 96-9p's circumstance-description requirement." (*Id.*, at 2–15). The Commissioner responds that Chief "Judge Mahoney's well-reasoned and supported [R&R] should be adopted by the Court without modification." (Doc. 26, at 2).

Because claimant abandoned her significant number of jobs in the national economy issue in her objection, the Court only reviews that issue for clear error. Having reviewed the record, the parties' briefs, and the R&R, the Court is not left with the definite and firm conviction that a mistake has been committed on that issue. Rather, the Court agrees that regional numbers, in particular given its ruling in *Sherry L. H. v. O'Malley*, No. 23-CV-4027, 2024 WL 4227048 (N.D. Iowa Aug. 12, 2024), are not required, and it was not error for the ALJ to not include them. The Court accepts Chief Judge Mahoney's recommendation on that issue. Thus, the Court now turns to de novo review of claimant's three remaining arguments.

***A. Listing 11.02B***

The Eighth Circuit has "consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). Rather, "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017); *accord Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016) ("The ALJ's failure to identify and analyze the appropriate listing, although error, may not by itself require reversal so long as the record otherwise supports the ALJ's overall conclusion."); *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("[T]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

"To prove that an impairment or combination of impairments equals a listing, a claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant bears the burden of showing that her impairment meets or equals the listing. *Pyland v. Apfel*, 149 F.3d 873 (8th Cir. 1998).

Social Security Ruling ("SSR") 19-4p lists migraines as a primary headache disorder. SSR 19-4p, 84 Fed. Reg. 44667 (Aug. 26, 2019). SSR 19-4 lays out the following criteria for determining if migraines, as a primary headache disorder, fit within listing 11.02B:

> Primary headache disorder is not a listed impairment in the Listing of Impairments (listings); however, we may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.
>
> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an [medically determinable impairment "(MDI")] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an [acceptable medical source ("AMS")] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for

> a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* at 44671. "There is no requirement under 11.02 that the plaintiff meet the exact criteria for seizures, as stated by the ALJ, but that Plaintiff's symptoms equal the general requirements of that section." *Marshall v. Comm'r of Soc. Sec. Admin.*, 8:23-CV-129, 2023 WL 8601218, at *8 (D. Neb. Dec. 12, 2023).

There is no disagreement here that the ALJ found migraines a severe impairment. (Doc. 13-2, at 32). There is also no disagreement that the ALJ did not discuss Listing 11.02B in his ruling. The real question, therefore, is whether the record as a whole supports finding that claimant's migraines did not equal the listing for epilepsy, and thus the failure to discuss Listing 11.02B was harmless.

Here, on its de novo review, the Court finds that any error was harmless as claimant failed to demonstrate that she met the first requirement: migraines equal in severity to dyscognitive seizures at least once a week for at least three consecutive months despite adherence to prescribed treatment. For the ALJ to make a listing determination, he needed to have a detailed description of a typical headache event from an acceptable medical source. Claimant's treatment notes list "migraine headaches" since July 21, 2020, on her problem list and a prescription for "SUMAtriptan (IMITREX)[.]" (Doc. 13-26, at 152–53). In addition, the record contains a more specific diagnosis of "[c]hronic migraine without aura without status migrainosus, not intractable[.]" (Doc. 13-26, at 244). At one point, claimant self-reported "[m]igraines come 4-5 times every day and they can last 5-6 hours." (Doc. 13-15, at 59). At the same time, however, regarding treatment, in January 2023, a medical provider found that "[h]eadaches have been controlled with conservative measures and over-the counter analgesics." (Doc. 13-25, at 233). Although there are frequent mentions of migraines, the record does not

contain a detailed description of a typical headache event from an acceptable medical source, and, indeed, no description of a typical headache event at all.

Given that claimant bears the burden to demonstrate that her impairment meets or equals the listing, the Court finds the lack of evidence in the record here fatal to claimant's objection. Likewise, the Court finds that the evidence in the record does not demonstrate that the ALJ's failure to consider Listing 11.02B was harmful. Rather, the Court finds that even given claimant's somewhat incredible self-reporting of daily migraines totaling up to thirty hours a day, those migraines were controlled through the medications claimant took and did not rise to the level of Listing 11.02B. *See David G. v. Berryhill*, No. 17-cv-3671 (HB), 2018 WL 4572981, at (D. Minn. Sept. 24, 2018) (finding any error harmless when there were no findings of aura, altered awareness, nausea, phototopia; intense, throbbing, or extremely painful headaches; or symptoms that would equate to a typical seizure pattern, daytime loss of consciousness or convulsions, or nocturnal episodes that significantly interfered with activities); *Angela M. v. Berryhill*, No. 18-cv-1258 (SER), 2019 WL 1506000, at *5 (D. Minn. Apr. 5, 2019) ("In sum, the Court finds the ALJ did not err in finding that Plaintiff did not meet Listing 11.02 because substantial evidence in the record supports the ALJ's determination."). Thus, the Court overrules claimant's objection on this first issue.

***B. Noise-Only Limitation***

An ALJ is not required to specifically address each statement made or limitations referenced in an opinion. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (stating that an ALJ is not required to "mechanically list and reject every possible limitation"); *accord Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The interpretation of physicians' findings is a factual matter left to the ALJ's authority."). Rather, "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). At the same time, an ALJ may not "play

doctor" by making their own medical determinations on how symptoms should manifest or what diagnoses signify. *Pate–Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009). Put another way, "an ALJ must not substitute his opinions for those of the physician." *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008).

A doctor evaluating claimant in April 2022 wrote, "she can have a light and noise sensitivity[.]" (Doc. 13-9, at 166). This statement followed the doctor's statement on claimant's headaches, and the doctor stated afterwards regarding claimant, "She had a [computed tomography ("CT")] done in 2020 that was without infusion and was negative. She does not notice any triggers for these headaches." (*Id.*). In his written ruling, the ALJ summarized this statement as "complaints of daily headaches with blurred vision and light and noise sensitivity at times[.]" (Doc. 13-2, at 35–36). The ALJ, however, did not include a limitation as to light in the RFC but rather that claimant "should work in an environment with a moderate noise intensity level or less." (*Id.*, at 34). The Court finds claimant's objection to the April 2022 statement and the lack of an inclusion of a light restriction also not a basis for remand here. Despite claimant's assertions to the contrary, it is not clear that the noise restriction the ALJ did find is based on the April 2022 statement. Likewise, the Court also finds that the singular statement summarizing that claimant can have a light sensitivity does not amount to a limitation by a medical provider, and, for that reason, the ALJ did not need to list it or explain his alleged rejection of it. Thus, the Court also overrules claimant's objection as to this issue.

***C. Walker***

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996).

"A prescription (or the lack of a prescription) for an assistive device is not necessarily dispositive of the presence or absence of medical necessity, but it is important to the ALJ's analysis. *Patricia M. v. Saul*, No. 18-cv-3462 (DSD/HB), 2020 WL 3633218, at *7 (D. Minn. Feb. 5, 2020) (citing *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014)). And, "courts typically require an unambiguous opinion from a physician stating the circumstances in which the assistive device is medically necessary." *Harrington v. Kijakazi*, No. CV 22-471 (JRT/ECW), 2023 WL 2524029, at *6 (D. Minn. Mar. 15, 2023) (cleaned up).

In his ruling denying claimant SSI, the ALJ stated, "There is no evidence indicating that the claimant either requires an ambulatory aide that requires use of both upper extremities or cannot perform fine and gross movements with at least one upper extremity due to a combination of extremity-related limitations and the use of a medically necessary mobility device." (Doc. 13-2, at 32). In treatment notes, there is a summary of claimant's self-report that claimant "was told to use walker by [physical therapist ("PT")], but does not have walker[.]" (Doc. 13-26, at 221). Likewise, another note states that claimant again self-reported that she is "supposed to be using a walker but does not have 1[.]" (*Id.*, at 216). However, the only actual PT note in the record on this topic reads: "Pt education with use of a Rolator walker to assist with stability during the gait cycle." (Doc. 13-25, at 65). Other medical providers noted the walker only as a matter of the record and did not independently find one needed and sometimes noted that she did not appear to use one. For example, in July 2022, a provider noted that claimant was "provided with rolling walker as an assistive device to help with balance and stability." (Doc. 13-3, at 44). In January 2023, a doctor noted that "[a] walker was ordered for her gait dysfunction however, there is no mention of this at the updated medical visits." (*Id.*, at 56). Later, in October 2024, a doctor found that claimant, while

engaging in occasional standing/walking must use a walker "but doesn't have one[.]" (Doc. 13-27, at 4).

Just as with the Listing 11.02B issue, the Court finds the lack of documentation on the specific circumstances in which a walker would be needed is fatal to claimant's objection on this issue. Rather, it appears that claimant's medical providers gave claimant a rolling walker in July 2022, but that two years later she either did not have it any longer or did not use it, which contradicts claimant's insistence that the walker was medically necessary and it was an error for the ALJ to conclude otherwise. Regardless, that there is no documentation in the record of how often and in what circumstances claimant would need a walker makes it clear that the ALJ's failure to include a walker requirement does not require remand. *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (finding ALJ's RFC determination was supported by substantial evidence based on, among other things, "no medical records or opinions documenting [claimant]'s use of a cane as being medically necessary"). *Tanya S. v. O'Malley*, No. 23-cv-1416 (ECW), 2024 WL 3858155, at *9 (D. Minn. Aug. 19, 2024) (finding no error when claimant "identified some records documenting her use of a walker" but "the record contains other medical evidence that she did not require a walker"). Thus, the Court overrules claimant's objection on this third issue as well, and accepts Chief Judge Mahoney's R&R without modification.

## *VI. CONCLUSION*

For these reasons, claimant's objection, (Doc. 25), to the R&R, (Doc. 24), is **overruled**. The Court **accepts** the R&R, (Doc. 24), **without modification**. *See* 28 U.S.C. § 636(b)(1). Following Chief Judge Mahoney's recommendation the ALJ's decision denying claimant's application for SSI is **affirmed** and judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 29th day of September, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa